# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 14, 2011

## RONALLEN HARDY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F64422     David M. Bragg, Judge**

---

**No. M2011-00497-CCA-R3-PC - Filed January 9, 2012**

---

The petitioner, Ronallen Hardy, filed a petition for post-conviction relief from his four felony convictions and the accompanying effective sentence of life plus twenty-two years, alleging that his counsel were ineffective. The post-conviction court denied the petition, and the petitioner now appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Sean G. Williams, Murfreesboro, Tennessee, for the appellant, Ronallen Hardy.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Trevor H. Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

Following a jury trial, the petitioner was convicted of first degree premeditated murder, first degree felony murder, especially aggravated robbery, aggravated burglary, conspiracy to commit especially aggravated robbery, and conspiracy to commit especially aggravated burglary. The petitioner's murder convictions were merged, and his conspiracy convictions were also merged. On direct appeal, this court summarized the proof as follows:

> The [petitioner's] convictions resulted from his
> involvement in the robbery and shooting death of Randy Betts

in December 2005. Before trial, the [petitioner] filed motions to suppress a taped statement he made to police in which he admitted that he, Aldrick "Scoot" Lillard, and Vanessa Claude went to the victim's house to take the victim's guns. According to the [petitioner's] statement, he and Claude waited in the car while Lillard knocked on the door of the victim's home. Shortly thereafter, the [petitioner] heard two gunshots and left the car to look into the house. The [petitioner] described the victim's appearance, injury, and location; however, he claimed that he only looked into the house. He said that he did not go into the house because his foot was bleeding from a prior gunshot wound he had received and that he did not want to leave his DNA at the scene. The [petitioner] said that Claude pulled the car into the yard and that Lillard spent around forty-five minutes loading guns from the victim's home into the car. Lillard told the [petitioner] that he shot the victim because the victim was a "snitch."

State v. Ronallen Hardy, No. M2008-00381-CCA-R3-CD, 2009 WL 2733821, at *1 (Tenn. Crim. App. at Nashville, Aug. 31, 2009). The petitioner received a total effective sentence of life without parole plus twenty-two years.

Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his counsel were ineffective. Specifically, the petitioner alleged that one of his attorneys (hereinafter "pretrial counsel") was ineffective by failing to adequately communicate with him and by withdrawing prior to trial. The petitioner alleged that the attorney who actually represented him at trial (hereinafter "trial counsel") was ineffective by failing to call witnesses or present mitigation evidence during the sentencing phase.[1]

At the post-conviction hearing, pretrial counsel testified that she and trial counsel were both appointed to represent the petitioner. She said that the petitioner had two co-defendants and that each co-defendant was appointed two attorneys. She acknowledged that she had never before tried a murder case.

Pretrial counsel recalled that meeting with the petitioner "face to face" was difficult because she resided in Rutherford County and he was incarcerated in Davidson County. Pretrial counsel asked that the petitioner be transferred to Rutherford County. However, the

---

[1] In his post-conviction petition, the petitioner raised additional claims of ineffective assistance that he did not pursue on appeal.

move upset and angered the petitioner, so pretrial counsel requested the petitioner be returned to Davidson County. Pretrial counsel said the petitioner was difficult to represent because he was uncooperative and "would fuss and carry on." Pretrial counsel recalled that she also spoke with the petitioner's mother.

Pretrial counsel said that there was extensive discovery and several court dates. She and trial counsel discussed the discovery materials with each other and with the petitioner. She recalled that she presented all plea offers to the petitioner, but none were accepted. She said that she may have spent five hours or less speaking directly with the petitioner but that she spent fifty hours or more on trial preparations.

Pretrial counsel stated that during the approximately six or eight months she represented the petitioner, she filed two motions to withdraw. Her first motion was due to her trouble communicating with the petitioner. She explained that the petitioner was angry and unhappy with the proceedings. However, that motion to withdraw was denied. Shortly before the scheduled trial date, "a tragic episode" occurred which necessitated that pretrial counsel withdraw; specifically, her son and his life-long best friend were robbed, and the friend was shot and killed during the robbery. The incident caused "emotional issues" for her, and she had to seek psychiatric help for her son. Concern for her son forced her to "back[] off" of her law practice for about a month. She stated that the facts of her son's robbery were similar to the facts of the petitioner's case and that she therefore did not "think [she] could have sat in the courtroom" during the petitioner's trial. Accordingly, she believed it was in the petitioner's best interest for her to withdraw. Pretrial counsel's second motion to withdraw was granted, and trial counsel filed a motion to continue.

Trial counsel testified that the majority of his practice was not devoted to criminal law but that he occasionally represented criminal clients. Trial counsel said that he was appointed to represent the petitioner at trial and on direct appeal. Trial counsel said, "I feel like I did everything possible that I could have done for [the petitioner]."

Trial counsel said that he met with the petitioner approximately twelve times, that he met with the petitioner's parents, and that he made himself available to the petitioner. Trial counsel said that the petitioner was usually cooperative with him. However, the petitioner ignored trial counsel's advice by refusing to stand to show respect when the judge and jury entered and exited the courtroom.

Trial counsel agreed that he and pretrial counsel "did a substantial amount of work" prior to pretrial counsel's withdrawal from the case. Trial counsel said that he was concerned about being the petitioner's sole attorney because he had never tried a murder case. Regardless, he did not file a motion to have co-counsel appointed because only one attorney

was appointed in a noncapital crime. Additionally, trial counsel said that he had experience in trying other types of cases.

Trial counsel said that the petitioner's extensive statements to police were the greatest obstacles of the case. Trial counsel spent hours reviewing the petitioner's statements. He also filed a motion to suppress the statements, but the motion was denied. Trial counsel stated that the petitioner chose not to testify at the trial or at the sentencing hearing.

Trial counsel stated that the petitioner turned eighteen years old shortly before the crimes were committed. Trial counsel, the petitioner, and the petitioner's parents discussed the petitioner's school work, activities, and any potential character evidence that could be offered in mitigation. Trial counsel also weighed "the pros and cons" of presenting witnesses and subjecting them to cross-examination. Trial counsel stated that if there had been any mitigation proof, he would have presented it at the sentencing hearing. He said, "The only way I would have intentionally not presented mitigation proof on his behalf is if it had been at his request or at his direction." Trial counsel specifically recalled the petitioner's family suggesting a potential mitigation witness that the petitioner did not want trial counsel to call.

The petitioner's mother, Connie Hardy, testified that she repeatedly called pretrial counsel to try to arrange a "three-way call" with the petitioner, who was incarcerated. However, she was successful in reaching pretrial counsel only one time, and the resulting "three-way call" lasted no more than fifteen minutes.

Mrs. Hardy stated that about two or three weeks prior to trial, she learned that trial counsel was also representing the petitioner. She repeatedly called trial counsel. Trial counsel returned the calls but was usually unable to make contact with Mrs. Hardy due to differences in their schedules.

Mrs. Hardy said that she and her husband met with trial counsel in person one time to discuss a plea offer made by the State; however, they never discussed the petitioner's childhood. Trial counsel asked Mrs. Hardy to recommend potential character witnesses, and she complied with the request. Mrs. Hardy was unable to attend the petitioner's sentencing hearing, but Mr. Hardy was there.

Following the hearing, the post-conviction court entered an order denying the petition for post-conviction relief. The post-conviction court accredited the testimony of trial counsel regarding the petitioner's decision to not testify at the sentencing hearing. Additionally, the court stated that trial counsel investigated the petitioner's background for potential mitigating evidence and discovered none. The court noted that the petitioner did not present proof of any mitigating evidence that could have been presented by trial counsel.

The post-conviction court observed that pretrial counsel's motion to withdraw was granted because Tennessee Supreme Court Rule 13 authorized the appointment of only one attorney in a non-capital case and because of the "tragic event" that occurred involving pretrial counsel's son. The post-conviction court found that the petitioner had presented no proof that counsel's withdrawal "fell below an attorney's professional standard of conduct." Further, the court accredited pretrial counsel's testimony that she believed her withdrawal was in the petitioner's best interest. The court also accredited pretrial counsel's testimony regarding the petitioner's uncooperative and angry nature. Moreover, the court noted that trial counsel was granted a continuance to give him additional time to prepare and that trial counsel "spent a substantial amount of time preparing the case." Additionally, the court accredited trial counsel's testimony that he considered and rejected presenting witnesses because such witnesses "might also have to give unfavorable character testimony or otherwise be impeached on cross-examination." Therefore, the post-conviction court found that counsel were not deficient and that the petitioner was not prejudiced by the actions or inactions of counsel. On appeal, the petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363,

369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

As we noted earlier, the petitioner alleges that pretrial counsel was ineffective by failing to adequately communicate with him and by withdrawing prior to trial.  The petitioner alleges that trial counsel was ineffective by failing to call witnesses or present mitigation evidence during the sentencing phase.  However, the petitioner does not explain how he was prejudiced by the alleged deficiencies of counsel or what witnesses could have been called.  Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  We may not speculate on what benefit a witness might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id.

As the post-conviction court found, both pretrial counsel and trial counsel spent a substantial amount of time preparing for the petitioner's case.  Due to a family tragedy, pretrial counsel was compelled to withdraw.  Trial counsel filed suppression motions and cross-examined witnesses.  Trial counsel said that he " did everything possible" for the petitioner and only declined to present proof at the petitioner's behest.  The petitioner did not present proof at the post-conviction hearing regarding the effect of additional meetings with counsel, of the benefit of pretrial counsel's continued representation, or of any mitigating evidence that could have been presented at the sentencing hearing.  We agree with the post-conviction court that the petitioner failed to carry his burden of establishing that his counsel were deficient or that he suffered prejudice from their representation.

-6-

### III. Conclusion

In sum, we conclude that the petitioner failed to establish that his counsel were ineffective. Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE